Moncure, P.,
delivered the opinion of the court.
The court is of opinion that by the seventh clause of the will of William Wharton, deceased, the residuum *862 of his estate is given to Joseph J. Halsey in trust for the separate use of his daughter, Gabriella D., during her life; and that John S. Wharton, with whom she afterwards intermarried, acquired by such intermarriage no beneficial interest in the said estate. Though an infant of tender years at the time of her father’s death, and though when he made his will he had no particular marriage of his said daughter in contemplation, yet it was competent for him to give property to her for her separate use, in contemplation of her future marriage generally, the effect of which gift would be, that she would be entitled to a separate use in such ■property during the existence of any future married state into which she might enter. Whether he made such a gift to her of the residuum of his estate, by the seventh clause of his will, is a question of intention, depending upon the true construction of the will. Thé intention to create such an estate is generally plainly expressed by appropriate words. But frequently it must be ascertained by construction, especially where the instrument on which the question arises, as in this case, is a will. The seventh clause of the will in this ease is in these words:
“ Seventhly. All the residue of my estate, real and personal, I hereby devise and bequeath to Joseph J. Halsey, to hold the same in trust for the sole use and benefit of my daughter Gabriella, and to manage the same for her, giving to her the rents, hires, issues and profits thereof during the term of her natural life, with power in the said trustee and the said Gabriella, by their joint consent and act, to sell such portions of the estate for the convenience of management as may be desirable or beneficial to my said daughter; the proceeds arising from such sales to be invested as the said trustee and my daughter Gabriella shall jointly deter *863 mine, and be held in trust by my said trustee for the sole use and benefit of my said daughter Gabriella during the term of her natural life, and after her death to be divided equally amongst her children living at the date of her decease, and the representatives of such as may die leaving children; and in the event of my said daughter^ dying unmarried, or having been married,.without leaving children living at the time of her death, then my will is, that my estate, subject to the provisions and legacies hereinbefore made for my wife and others, shall pass and go to. such persons, and in such proportions and-manner as my said daughter Gabriella shall, by her will duly executed, appoint; and in the event of my said daughter’s decease without children and without leaving a will, then that my estate shall be equally divided between the children of my brothers, share and share alike.”
The testator died shortly after the date of his will, which was on 16th day of July 1858. The will was recorded August 16th, 1858. He had but one child, the said Gabriella D., who was born on the 20th day of May 1844, and was therefore only a few months over fourteen years of age when her father died. She was the chief object of his bounty, the other objects being his wife, mother, brother and sister, who were provided for by prior clauses of his will. By the 8th and last clause, he nominated William J. Wharton, Joseph J. Halsey, and John Wharton his executors, and they duly qualified as such. The widow of the testator died in 1859; and about a week thereafter, to-wit in July 1859, their daughter, the said Gabriella, intermarried with John S. Wharton. They were married in Washington city. Joseph J. Halsey, the trustee named in the residuary clause of the will aforesaid, accepted and undertook the trust thereby reposed in him, and *864 continued to act as such trustee until the 2nd day of November 1863; when by a decree of the circuit court of Culpeper county, made in a suit brought by the said Gabriella D. Wharton against the said Joseph J. Halsey trustee, &c., and John S. Wharton, the said Halsey was released from the trusteeship aforesaid, and the said John S. Wharton was “appointed trustee in the place and stead of the said Joseph J. Halsey, to hold in trust for the sole and separate use and benefit of the plaintiff Gabriella D. Wharton, all of the estate bequeathed and devised for her benefit and use, with such rights and powers over, and subject to such responsibility concerning the samé, as the said Joseph J. Halsey bad, or was subject to, by virtue of the said will; but this decree,” it was further declared, “shall be suspended and of no effect, unless and until the said John S. Wharton shall, before the court or before the clerk thereof in his office, execute bond with good security, in a penalty of $26,000, payable to the commonwealth of Virginia, and conditioned for the faithful performance of his duties as such trustee.”
John S. Wharton complied with the condition of the said decree by executing bond with security as thereby required; and afterwards, to-wit: on the 16th day of September 1864, acting as such substituted trustee, sold and conveyed a large and valuable portion of the trust subject to-wit: 568J acres of land, to the appellant E. W. Bedinger, for $56,805 in confederate money. It is stated in the deed that it is, “between John S. Wharton in his own right, as husband of Gabriella D. Wharton, as trustee of his said wife, by virtue of an-appointment by the circuit court of chancery of Culpeper county, Virginia, by decree entered on the 2nd day of November 1863, and Gabriella D. Wharton his wife, both of Richmond city, Virginia, of the first part, *865 and Everett W. Bedinger, of Orange county, Virginia, of the second part;” and that it “witnesseth, that in order that the estate of Vm. Wharton, dec’d, devised by him unto his daughter, the said Gabriella D. Wharton, may be more conveniently and profitably managed for the sole use and benefit of the said devisee, Gabriella D. Wharton, and in consideration of the sum of” money aforesaid to them in hand paid by the said purchaser, the said parties of the first part convey to him by the said deed, with general warranty, the tract of land aforesaid.
By the 7th clause of the testator’s will, the residuum of his estate is given to a trustee “for the sole use and benefit” of his daughter. While these are not the most appropriate words for creating a separate estate, and while the word “separate” would have been more appropriate for that purpose, and would have left no room for doubt as to the intention of the testator, yet there are cases in which it has been held that the words “for the sole use and benefit,” especially when used in connection with the appointment of a trustee to hold for that purpose, are sufficient to create a separate estate. 2 Story’s Eq. § 1882; Nixon v. Rose, 12 Gratt. 425, and cases there cited.
But it is unnecessary to decide in this case what would have been the effect if these words only had been used in connection with the appointment of a trustee, and whether they would have sufficiently indicated an intention to create a separate estate. It is very clear that wre may look at the whole residuary clause to ascertain whether such an intention is thereby sufficiently indicated; and if so, effect will be given to the intention, just as much as if a separate estate had been expressly given, in the most direct and appro *866 priate terms. R., 471. Id; and Prout v. Roby, 15 Wall. U. S.
Row, looking at the whole clause together, it would seem that there can be no room for doubt as to the intention of the testator; and that he certainly intended to create a separate estate in his daughter, and to guard it effectually against the marital rights of any husband she might marry. Such rights would have been wholly inconsistent with some of the most important trusts created by the clause. It is true the daughter was not only unmarried when the will was made, but was then an infant, and quite young, and no particular marriage of said infant was then in contemplation. It was clearly in the contemplation of the testator, however, that his daughter might, and probably would, marry and have children. And though any future husband she might have is not provided for, nor even referred to in the clause, it expressly provides for any children she might leave, and also for the event of her dying without children: disposing of the estate, in either event, without reference to any right or interest of any husband she might have.
It is difficult, if not impossible, to suppose, that with the subject of the marriage of his daughter in his mind, and thus providing for the issue of such marriage, and the event of there being no such issue in existence at her death, there would have been no reference whatever in the clause to the existence or nonexistence of her husband, if it had been intended that the estate left in trust “for the sole use and benefit” of his daughter should be subject to the marital rights of any husband she might have. These important words “for the sole use and benefit,” twice occur in the clause, and in each instance to show the purpose for which the trustee should hold and manage the *867 •trust subject. In tbe former instance tbe trustee is directed “to manage the same for her, giving to her the rents, hires, issues and profits thereof during the ■of her natural life; with power in the said trustee and the said Gabriella, by their joint consent and act, to sell such portions of the estate for the convenience of management as may he desirable or beneficial to my said daughter; the proceeds arising from such sales to be invested as the said trustee and my daughter shall .jointly determine, and be held in trust by my said trustee for the sole use and benefit of my said daughter •during the term of her natural life, and after her death to be ” disposed of as further provided in the clause. It must be manifest how inconsistent with all, or nearly all, of the trusts of this clause, would be the idea of any marital rights of her husband in the trust subject.
This view of the case renders it unnecessary to decide what would be the effect of the decree, which substituted her husband as trustee in the place of the one appointed by the will, and which declares that the substituted trustee is to hold the trust subject, “for the sole and separate use and benefit of the said Gabriella D. Wharton.” We need not, therefore, decide whether the question of separate estate be not in fact res adju■dicata in this case, and between the parties thereto. Certainly her husband had a right, so far as he was concerned, to waive and relinquish his marital rights, if he had any, and to sanction any construction of the court as to the existence or non-existence of such rights, adopted in a suit to which he was a party. And any subsequent purchaser of the trust subject from the trustee, with full knowledge that such construction had been adopted and acted on, as was the ease here, would seem to stand on the same ground with the husband in regard to any claim to marital rights in the *868 subject. But it is unnecessary, as before stated, to decide that question in this case.
The learned counsel for the appellant refers to the cage of Gilbert v. Lewis as having been reported in 66 Eng. Ch. R. 88, and decided in 1862, upon which he-places much reliance; and he expresses the hope that-, the court will attentively consider the case. We have-accordingly examined and attentively considered it.. But we do not think that it is at all in conflict with what we have said. We find the case reported in 1 DeGex, Jones & Smith’s Reports, p. 88. It is a decision of Lord Chancellor Westbury, and only decides, that a mere devise to a woman for her sole use and benefit does not sufficiently indicate an intention to-limit the devised property to her separate use. There, no trustee was interposed, and there was nothing to-indicate an intention to create a separate estate but the words, “for her sole use and benefit.” The chancellor in delivering his opinion said: “There is’no trust created by the will. There are no words indicative of exclusive enjoyment beyond those that I have mentioned. There is no such machinery, in short, provided by the-will, as is requisite in effect for the creation^ or at all events for the administration of the separate estate of' á married woman. The devise is a legal devise, and the proposition is, that the words, ‘for her sole use and benefit,’ manifest a clear intention on the part of’ the testator, that in the event of subsequent covertureóf his widow, she should be entitled to a separate interest in the property.” He then proceeds to review the cases on-the subject, and concludes thus: “There-is no case of a will containing a disposition to a woman,, either single or becoming discovert immediately on the death of the testator, in which these simple words, unconnected with a gift to trustees, have been made the- *869 foundation of a decision that the devisee takes a separrate estate. I entirely concur in the observations of Lord Brougham in the case of Tyler v. Lake, (2 Russ & 183), that the words, to exclude the operation of the legal rule transferring the estate to the husband upon subsequent coverture, must be clear, and afford no room for doubt as to the intention of the testator.” Surely these remarks of his lordship do not apply to this case, which is wholly unlike the one in which they were made. Here, á trustee was appointed, the most careful trusts were created, and “such machinery, in short, provided by the will as is requisite, in effect, for the creation, or at all events for the administration of the separate estate of a married woman.” The words of the clause are “clear, and afford no room for doubt as to the intention of the testator.”
The court is further of opinion that the sale aforesaid, made on the 16th day of September 1864, by John S. Wharton as substituted trustee in the place of Joseph J. Halsey, to the appellant Everett W. Bedinger, of the tract of land lying in the county of Culpeper, constituting a part of the residuum and trust subject ■aforesaid, was a breach of trust in the said substituted trustee, to which the said purchaser was privy, and in which he participated. The sale was made for $56,805 dollars in confederate money, which, at the time of the sale, was so much depreciated in value, that twenty-five dollars of it were worth only one in gold. The gold value of the price at which the land was sold per acre was but four dollars, whereas the value of the land before the war was about twenty-five dollars. Hotbing but the most extraordinary circumstances ■could have warranted such a sale, and the burden of proving the existence of such circumstances devolved on the purchaser, in order to sustain, even if it should *870 be sustained at all, the validity of the sale. There is certainly no such proof in this record; and the sale is therefore invalid. In saying that the purchaser was privy to, and participated in, the breach of trust aforesaid, we do not mean to impute to him any moral or intentional wrong; but our meaning is that such is the legal effect of the transaction; as will hereafter be more fully explained.
The court is further of opinion, that the said Gabriella D. Wharton, being an infant on the 16th day of September 1864, when the deed by which the said land was conveyed to the said purchaser was executed, the said deed was therefore voidable by the said infant after she arrived at the age of twenty-one years, which was on the 20th day of May 1865; and was actually avoided by her after that event by the institution of this suit to recover the said land and the possession thereof, notwithstanding the execution of the said deed. Mustard v. Wohlford’s heirs, 15 Gratt. 829.
The court is further of opinion, that there was no such laches on the part of the said Gabriella D. Wharton in disaffirming her said deed as could prevent her from disaffirming it. Little more than four years elapsed after she arrived at the age of twenty-one years before the institution of this suit; she was a feme covert during all that period; and there were acts of assembly in force during the whole, or nearly the whole of it which prevented the running, even of the act of limitations, much less the operation of presumptions arising from laches and lapse of time.
The court is further of opinion, that there is no error’ in the decree appealed from in not dismissing the original and amended bills in this case, because neither of them contained any offer to restore the purchase money. Whether a contract of an infant be com *871 pletely executed or be executory merely, it is very clear that it cannot be avoided by the infant after attaining lawful age without restoring anything which may have been received by him in consideration of the contract, and may remain in his hands on his arrival at such age. And when such contract is executory merely, it is very clear that it can be avoided by the infant after attaining lawful age, without restoring anything which may have been received by him in consideration of the contract, and may have been consumed by him during infancy, or not remain in his hands on his arrival at lawful age. 1 Am. Leading cases, edition of 1871, top page 318, marginal 258. Mustard v. Wohlford’s heirs, 15 Gratt. 329, 340-342. Whether or not the same principle applies to the case of an executed contract, is a question which was left undecided in the last named case, and has never yet been decided by this court. Nor is it necessary now to decide it, and no opinion, therefore, is intended to be expressed in regard to it.
It does not appear, and is not probable; on the contrary it is extremely improbable, that any part of the consideration received from the appellant for the land sold and conveyed to him as aforesaid, or anything purchased or procured with such consideration or any part of it, remained in the hands of the infant on her arrival at lawful age; or even in the hands of her husband and trustee at that period. The consideration was received altogether in confederate money; which, if retained in the hands of the trustee until the end of the war, which happened not very long thereafter, would have wholly perished. Whether any, and if any, what, part of it was so retained, or what was done with it, does not appear; except that a part of it, to-wit: $30,000, (about one-half of it,) was expended in the purchase of a house and lot in the city of Richmond, *872 which were' conveyed to the husband in his own right, and. was afterwards sold and conveyed by him to person for confederate money; his wife join|ng him }n ¿ee¿[ which was executed to the purchaser, and being still under age at the time of the execution of such deed. Whatever interest the said husband and wife or either of them may have had in the said house and lot at the date of the decree appealed from, was then, in pursuance of the said decree duly conveyed by them to the appellant. What was done with the purchase money received of such purchaser does not appear. No doubt a portion, and perhaps a large portion of the said purchase money, and of the remaining consideration received for the land sold and conveyed to the appellant as aforesaid, was applied to the support of the said infant. But certainly the said infant could not, on that account, have become liable on her arrival at age to refund the consideration which had been received by her husband from the appellant as aforesaid, or be then prevented from disaffirming the said contract and recovering the said, land from the appellant. The most that he could justly claim against her, if even he could justly claim to that extent, would be, that while she derived her support, or any part of it, from the consideration received from the appellant as aforesaid, and to the extent to which she so derived such support, or actually received and enjoyed for her sole use and benefit the said consideration, he should not be accountable for rent of the said land. But that question does not now arise in the case, and it is not intended now to decide, nor express any opinion upon it. It may hereafter arise in the court below, when that court comes to act upon the account of rents and profits which remains yet to be taken under the *873 -decree appealed from. The only interest given to her by the will of her father in the residuum of his estate, is to have and enjoy for her sole use and benefit, “the rents, hires, issues and profits thereof during the term of her natural life.” He expressly declared that the trustee should hold the trust subject during his daughter’s life, and “manage the same for her, giving to her the rents, hires, issues and profits thereof;” which he plainly intended she should receive and enjoy as they accrued, and not dispose of by anticipation; so that she might have the continual means of support during her life. Subject to that life estate, the residuum is .given by the will on other and ulterior limitations in which she has no personal interest. In no manner and to no extent is she accountable for the principal of the said consideration, and no benefit which she may possibly have derived from that consideration can prevent her from avoiding the deed executed by her during her infancy as aforesaid and having the property thereby conveyed, retaken and held under the trusts created by the seventh clause of the will.
It is contended, by the appellant, that he is entitled to the property now in controversy under that provision of the residuary clause of the will which empowered the trustee and the said G-abriella by their .joint consent and act “to sell such portions of the estate for the convenience of management as may be desirable or beneficial to my said daughter; the proceeds arising from such sales to be invested as the said trustee and my daughter Gabriella shall jointly determine, and be held in trust as aforesaid, by my said trustee, for the sole use and benefit of my said daughter during the term of her natural life.” It is contended that under this a title was sold and *874 to the appellant, who was not hound to see to the ap- .... „ . plication ot the purchase money.
The testator does not empower the trustee to make-a saie 0f any part 0f the trust subject, except in conjunction with the said G-abriella, and by their joint consent and act; and then, only such portions of the estate for the convenience of management, as may be desirable or beneficial to his said daughter. His daughter was but fourteen years old at the date of bis will, and we cannot suppose that he intended to intrust to her so important a power to be exercised during her infancy, even conceding that he had the right to do so. We must suppose that he intended this power to be exercised, if at all, after her arrival at lawful age. If so, there was no power, even in the trustee, to sell the property at the time the deed was made, and of course the deed is void.
But even if the daughter was empowered to act in making a sale during her infancy; or, if the trustee-was empowered to act alone in making it, did it come-within the power to sell the whole of the trust subject?' or so important a part of it as the tract of land in question, which was no doubt the chief part of the trust subject, and the whole of the real estate embraced therein? Or was it intended to empower the sale of any comparatively small portions of the estate, perhaps slaves or other personalty especially, and then only “for the convenience of management.”
But however these questions may be,-it is unnecessary now to decide them. Certainly the sale of the land under the power, even conceding its existence, for confederate money, when it was so much depreciated in value as it was at the time of the sale, and when it was daily and rapidly depreciating more and more, was a palpable breach of trust in which the purchaser *875 participated as aforesaid, unless there were very pecu- ,. , , liar circumstances to warrant or excuse such a sale; the burden of proving which circumstances devolves the purchaser, and there is no such proof in the record. The exposure of the land to the ravages of two contending armies, and the manner in which it had been wasted by them, may have made it desirable and proper, if possible, to exchange it for, or sell it and buy, other land not so much exposed, to be held in trust as aforesaid; and if that had been proved to have been done, it might have warranted or excused the act of the trustee in making such exchange, or sale and purchase. But certainly proof that other property of about the same value with the land sold by the trustee, was acquired by him with the proceeds of said sale, to be held on the same trusts, would be required to validate the said sale, either at law or in equity. If the trustee had sold the land in pursuance of the power in this case, and for good money, a question might well have been raised whether the purchaser was bound to see to the application of the purchase money, according to the rules of law on that subject. But such was not the case. The trustee sold the land, not for good money, but for confederate money, then current, at an enormous depreciation, and daily depreciating more and more. The purchaser paid to him the whole amount of this depreciated purchase money, and no part of it was invested as required by the will in the purchase of' other property to be held in trust as aforesaid, but all appears to have been lost, as might well have been expected. And, in the meantime, it seems the trustee has become perfectly insolvent and nothing can be recovered of him.
It may be proper for us to say, in justice to the-appellant, before we close our opinion in this case, that *876 we consider it a very hard one on his part, and have, therefore, decided it against him with great reluctance. acted in good faith in making the purchase in eon-federate money, and paying it to the trustee. He had sold his own land for confederate money, shortly before he made the purchase, and applied the money he received to the purchase of the land in controversy, which he was advised and believed his vendors had power to sell and convey. He and his counsel in making the purchase, no doubt believed as they said they did, that the female complainant was over twenty-one years of age when the deed was executed, as she had been for several years married. But though the said counsel was under the impression that he was informed both by Dr. J. S. Whárton and Gt. D. Wharton, his wife, before the deed was executed, that she was' over age; yet we think it appears from the record that the said counsel was not really so informed, but inferred the fact from her appearance, and the length of time she had been married. But it is no doubt true, as he states, that neither Dr. Wharton nor his wife, nor Mr. and Mrs. Glass then living on the land, (the latter being her aunt), nor Dr. J. W. Ashby, a friend and connection of the family, and the next friend of the complainant in this suit, who was active in promoting the sale, ever intimated to him that she was under age, though it does not appear that any of the said parties was influenced by fraudulent motives in failing to give such information. But notwithstanding the hardships of the case on the part of the appellant, we think the law is against him, for the reasons before stated, and •decide accordingly.
It is insisted by the appellees, that they are entitled to rents and profits from the 16th of September 1864, •or at least from the close of the late war, instead of *877 from the date of the institution of this suit whereby the contract was disaffirmed by Mrs. Wharton, to wit: the 12th day of July 1869; and they ask that the court will pass on this question for the guidance of the court below, that the case may not be brought back to this court on this point by either party. But as our jurisdiction in this case is appellate only, we do not consider it proper to decide, or express an opinion upon this question, until it shall have been first adjudicated by the court below; we therefore decline to do so.
The decree appealed from is therefore affirmed.
Decree arrirmed.